UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 18-10400-RWZ

HENRY LEFEBVRE

v.

ANDREW SAUL,[1]
Commissioner of the Social Security Administration

MEMORANDUM OF DECISION

October 17, 2019

ZOBEL, S.D.J.

Henry Lefebvre ("plaintiff" or "claimant") appeals from a final decision by the Commissioner of Social Security ("the Commissioner") upholding an administrative law judge's ("ALJ") decision. The ALJ determined that plaintiff qualified for supplemental security income ("SSI") beginning on December 19, 2017, but did not qualify prior to that date. He denied disability insurance benefits ("DIB") entirely because plaintiff did not have disability insured status on the date his disability began.

I.  **Background[2]**

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Andrew Saul has been substituted for Nancy A. Berryhill as Commissioner of the Social Security Administration.
[2] Since 2006, plaintiff has applied unsuccessfully for SSI and DIB several times. Pertinent to this appeal are the claims filed in February 2009 and April 2012.

1

In February 2009, plaintiff filed for SSI and DIB, but his claims were denied on April 17, 2009 at the initial determination phase. Plaintiff did not seek reconsideration of the denial.

In April 2012, plaintiff filed new SSI and DIB applications, in which he alleged that he had been disabled since April 2003 after a large spring fell on his hand and broke his right wrist. These applications were denied in an initial determination and again on reconsideration. Plaintiff then obtained a hearing before an ALJ, who denied the claims on December 10, 2013. The Appeals Council declined plaintiff's request for review, and plaintiff appealed to the United States District Court. R. 552.[3] At the Commissioner's request, the Court remanded the case for further proceedings. Lefebvre v. Colvin, No. 15-CV-11610-GAO, ECF No. 23 (D. Mass. Feb. 16, 2016); see also R. 555. On remand, the ALJ held a hearing on October 24, 2017, at which plaintiff and Vocational Expert ("VE")[4] Marissa Howell testified.

The ALJ issued his written decision on December 28, 2017 ("2017 ALJ decision"). As an initial matter, he declined to reopen plaintiff's SSI and DIB claims that had been denied on April 17, 2009, and therefore only focused on the period beginning with April 17, 2009. He found plaintiff was not disabled from that date until December 19, 2017, when he presumptively became disabled and eligible for SSI due to the

---

[3] "R." refers to the Social Security administrative record, which was filed in this appeal as Docket # 13.
[4] Vocational Experts are professionals contracted by the Social Security Administration to provide testimony in agency proceedings. They must have: (1) expertise and current knowledge of working conditions and physical demands of various' jobs; (2) knowledge of the existence and numbers of those jobs in the national economy; and (3) involvement in or knowledge of placing adult workers with disabilities into jobs. Biestek v. Berryhill, 139 S. Ct. 1148, 1152 (2019) (quoting SSA, Hearings, Appeals, and Litigation Law Manual I–2–1–31.B.1 (June 16, 2016)).

combination of his age and limitations. However, the ALJ denied the claim for DIB because plaintiff no longer had disability insured status on that date.[5] See 20 C.F.R. § 404.131. Plaintiff now appeals the ALJ's SSI decision.

### A. Applicable Statutes and Regulations

To receive SSI or DIB benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).[6] The impairment or impairments must be "of such severity that [a claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also 20 C.F.R. §§ 404.1505(a), 416.905(a).

The ALJ analyzes whether a claimant is disabled by using an established five-step sequential evaluation process. See 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v). Under this framework, the ALJ first determines whether the claimant is currently engaging in substantial gainful work activity. If not, then at Step 2, the ALJ decides whether the claimant has a "severe" medical impairment or impairments. A severe impairment "significantly limits [the claimant's] physical or mental ability to do basic work activities." Id. §§ 404.1520(c), 416.920(c). If the

---

[5] The ALJ determined that plaintiff's insured status expired on December 31, 2008—a finding neither party challenges on appeal.
[6] Section 423 of Title 42 pertains to DIB, while Section 1382 pertains to SSI.

3

claimant has a severe impairment or impairments, the ALJ considers, third, whether the impairment or impairments meets or equals an entry in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1, and meets the duration requirement. If so, the claimant is considered disabled. If not, the ALJ must next determine the claimant's residual functional capacity ("RFC"), which is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ then moves to Step 4 and determines whether the claimant's RFC allows him to perform his past relevant work. If the claimant has the RFC to perform his past relevant work, he is not disabled. If the claimant does not, "the Commissioner then has the burden, at Step 5, of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001); see also 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). The ALJ consults a VE and/or the Medical-Vocational Grid Rules ("Grid Rules")[7] at Step 5 to determine whether the claimant can do other work in light of his RFC, age, education, and work experience.

### B. The 2017 ALJ Decision

At the first step of the sequential evaluation process, the ALJ determined that since April 17, 2009, plaintiff "has not engaged in substantial gainful activity." R. 448. At Step 2, he found that plaintiff has the following severe impairments: status post right wrist fusion, borderline intellectual function, and alcohol abuse. The ALJ explained at Step 3 that plaintiff "has not had an impairment or combination of impairments that

---

[7] The Grid Rules, 20 C.F.R. Part 404, Subpt. P, App. 2, contain a matrix of exertional capacity, age, education, and work experience. If a claimant's limitations are exclusively exertional, the ALJ can rely solely on the Grid Rules to meet the burden at Step 5.

meets or medically equals the severity of one of the listed impairments" in 20 C.F.R.
Part 404, Subpt. P, App. 1. R. 449. He assessed plaintiff's RFC:

> After careful consideration of the entire record, I find that since April 17, 2009, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant is able to lift and carry 10 pounds occasionally and less than 10 pounds frequently, stand and walk for 6 hours and sit for 6 hours out of an 8 hour workday, can occasionally push and pull with the right dominant upper extremity, can frequently climb ramps and stairs, stoop, kneel, crouch, occasionally balance and never climb ropes, scaffolds and ladders and crawl, can occasionally finger and handle with the right dominant upper extremity, must avoid hazards such as moving machinery, unprotected heights, slipper[y] and uneven surfaces and is limited to simple, routine, repetitive tasks.

R. 450.

At the fourth step, the ALJ determined that plaintiff is unable to perform his past work as a truck mechanic. Finally, he explained that, prior to December 19, 2017, considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could have performed. R. 455. He concluded, however, that as of December 19, 2017, plaintiff's age category changed from "closely approaching advanced age" to "advanced age." R. 454. As plaintiff was within "a few days to a few months" of attaining the "advanced age" category at the time of the ALJ's decision, the ALJ explained that use of the next age category was supported by "the significant adverse impact of all factors on the claimant's ability to adjust to other work." R. 454; see also 20 C.F.R. § 416.963(b) (age categories need not be applied mechanically). He concluded that the Grid Rules support a presumption that plaintiff was disabled as of December 19, 2017, see R. 456,

5

and was therefore entitled to SSI beginning on that date.  However, because plaintiff's onset date was December 19, 2017, when plaintiff did not have disability insured status, he was not entitled to DIB.

### C. The Appeal

Plaintiff did not file exceptions to the ALJ's decision, and the Social Security Administration's Appeals Council did not assume jurisdiction within 60 days.  The ALJ's decision thus became the final decision of the Commissioner and is properly before this court.  20 C.F.R. § 404.984(d).

## II. Standard of Review

The Commissioner's findings of fact are conclusive if based on the correct legal standard and supported by substantial evidence.  42 U.S.C. § 405(g); Seavey, 276 F.3d at 9.  The substantial evidence standard is "not high" and only requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Biestek, 139 S. Ct. at 1154 (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  So long as the Commissioner's determinations are supported by substantial evidence, they must be affirmed, "even if the record arguably could justify a different conclusion."  Rodriguez Pagan v. Sec'y Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).  Further, resolving credibility issues "and the drawing of permissible inference from evidentiary facts are the prime responsibility of the [Commissioner]."  Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)

(quoting Rodriguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965)).  Questions of law are reviewed de novo.  Seavey, 276 F.3d at 9.

## III. Discussion

Plaintiff challenges the 2017 ALJ decision in five particulars: that the ALJ (1) failed to consider plaintiff's alleged illiteracy in assessing his RFC; (2) improperly interpreted and weighed medical opinions in the record; (3) found jobs in significant numbers that plaintiff could perform at Step 5; and (4) declined to reopen plaintiff's 2009 SSI and DIB applications.

### A. Plaintiff's Alleged Illiteracy

Plaintiff claims that he is unable to read or write and that, if the ALJ determined that he was illiterate when assessing his RFC, the Grid Rules would have suggested at Step 5 that he was disabled prior to December 2017.  See 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.09.

The record contains conflicting evidence regarding plaintiff's illiteracy.  Plaintiff testified at the October 29, 2013, and October 24, 2017, hearings that he never learned to read and was unable to write.  R. 487, 524.  Moreover, the record includes a June 14, 2006, evaluation by Dr. Milton Taylor of plaintiff's intellectual challenges, which included a full-scale IQ score of 75, and plaintiff's self-reported illiteracy.  However, the ALJ questioned plaintiff about his alleged illiteracy at the hearings and noted that the record contained forms that plaintiff may have filled out himself.  R. 487-88, 521.  Moreover, his 2017 decision references plaintiff's education history: between 1978 and 1982, plaintiff

7

attended and graduated from Greater Lowell Regional Vocational Technical School. He passed all high school courses without repeating any grades and attended both regular and special education classes. R. 432-33. As the ALJ explained, "in order to pass exams, the claimant would have been required to read and write at a higher level than alleged." R. 452. The record also contains various forms for public assistance on which plaintiff indicated he was either able to read and write English or possessed a "limited" (rather than non-existent) ability to do so. R. 1798, 2102, 2081. Thus, "even if the record arguably could justify a different conclusion," the ALJ's determination that plaintiff is not illiterate finds substantial support in the record. Rodriguez Pagan, 819 F.2d at 3.

### B.     Weighing of Physician Opinions[8]

Plaintiff next challenges the ALJ's treatment of Dr. Nurhan Kasparyan's opinion and the opinion of an agency physician from the Massachusetts Disability Evaluation Service ("DES").

Dr. Kasparyan, plaintiff's orthopedic surgeon, indicated in a June 2015 questionnaire that plaintiff was limited to less than two and a half hours per day of manipulative functions—including reaching, handling, fingering, and feeling. R. 1985. The ALJ gave "partial weight" to this assessment and specifically agreed with the identified "limitations in lifting, carrying, and fine and gross manipulation." R. 453. Yet, the ALJ concluded that plaintiff had the RFC to occasionally finger and handle ("fine and gross manipulation") with his right dominant extremity, which plaintiff contends is

---

[8]     The Commissioner's new regulations for evaluating opinion evidence apply only to claims filed on or after March 27, 2017, and thus are not applicable here. 20 C.F.R. § 416.920c.

incompatible with Dr. Kasparyan's two-and-a-half-hour limitation that the ALJ supposedly adopted. But "occasionally" is defined by the Social Security Administration as "occurring from very little up to one-third of the time, and [] generally total[ing] <u>no more than about 2 hours</u> of an 8-hour workday." Social Security Ruling ("SSR") 96-9p, 1996 WL 374185, at *3 (July 2, 1996) (emphasis added). Therefore, there is no inconsistency or error.

Plaintiff also argues that this assessment of his fine and gross manipulation capabilities rested on the ALJ's improper rejection of a September 2015 state agency physician's report that stated that plaintiff could "never" finger or handle with his right extremity. R. 2078-2122. The ALJ gave "partial weight" to that opinion, adopting its description of plaintiff's range of work and ability to lift and carry. However, as just mentioned, the ALJ more heavily credited the 2015 opinion of Dr. Kasparyan, who performed approximately twelve surgeries on plaintiff over the course of several years.[9] Moreover, the ALJ noted plaintiff's more recent x-rays and test results, Dr. Kasparyan's reports of improvement in functioning, good passive range of motion in the right digits, as well as plaintiff's ability to do certain chores and household tasks. R. 452-54. There were also several gaps in plaintiff's treatment over the years and minimal evidence of occupational therapy, which the ALJ indicated undermined the claimed severity of the symptoms or, perhaps, exacerbated them. R. 452. Lastly, additional state disability

---

[9] Plaintiff's complaint that the ALJ relied <u>solely</u> on reports from 2012 by state agency physicians Dr. Goulding and Dr. Palmeri to assess his fine and gross manipulative functions is incorrect. Docket # 17 at 13.

9

evaluations of plaintiff from May 2015 and September 2015 assessed an even less restricted RFC than that adopted by the ALJ. R. 570-71, 581-83.

Thus, while some reports in the 2,500-page record suggest a complete lack of fine and gross manipulation abilities, enough relevant evidence exists to adequately support the ALJ's determination that plaintiff could "occasionally" finger and handle with the right dominant upper extremity. See Biestek, 139 S. Ct. at 1154.

**C.     Step 5 Analysis**

Plaintiff challenges the ALJ's determination at Step 5 that, prior to December 19, 2017, jobs existed in significant numbers in the national economy that plaintiff could have performed. Here, the ALJ relied principally on the testimony of VE Howell, who stated that plaintiff could have performed the jobs of Surveillance System Monitor, Call Out Operator, Fruit Distributor, and Bakery Worker. Two significant issues exist at Step 5 that persuade me that remand is appropriate.

First, VE Howell's testimony regarding the requirements of the four identified occupations is problematic and casts doubt on the reliability of her opinion. Every occupation in the Dictionary of Occupational Titles ("DOT") has General Educational Development ("GED") requirements for reasoning, language, and mathematical development. VE Howell stated that the jobs of Fruit Distributor, Bakery Worker, Surveillance System Monitor, and Call Out Operator require no reading, and that the latter position is the only one that requires any writing. R. 494-95. But this testimony conflicts with DOT's GED requirements for those positions. The DOT identifies Fruit

10

Distributor and Bakery Worker as requiring the ability to read "at a rate of 95-120 words per minute" and to write "simple sentences." DOT (U.S. Dep't of Labor, 4th ed. rev. 1991) §§ 921.685-046, 524.687–022; App. C, § III. Surveillance System Monitor and Call Out Operator require higher reading and writing abilities, including the ability to "read a variety of novels, magazines, atlases, and encyclopedias" and to "write reports and essays with proper format, punctuation, spelling, and grammar." Id. §§ 379.367-010, 237.367-014; App. C, § III.

It is the responsibility of the adjudicator—here, the ALJ—to identify and obtain a reasonable explanation for any conflicts between VE testimony and the DOT before relying on such testimony. SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). The ALJ determined that plaintiff was not illiterate per se, but that the record established plaintiff had difficulty reading and writing and was severely impaired by his borderline intellectual function. He thus limited plaintiff's RFC to "simple, routine, repetitive tasks." R. 450. The conclusion that plaintiff could nonetheless perform the four identified occupations prior to December 19, 2017, seems to have rested on VE Howell's inaccurate description of the DOT and the ALJ's consequent failure to identify and resolve the discrepancy. See Vining v. Astrue, 720 F. Supp. 2d 126, 135 (D. Me. 2010) (remanding when ALJ failed to detect conflict between occupations' GED levels and VE's testimony that a person limited to the performance of "simple, repetitive tasks" could perform certain occupations).[10]

---

[10] Because I find that a conflict exists between VE Howell's testimony and the DOT's GED levels and remand is required, I do not separately consider plaintiff's additional Step 5 challenge to the application of the aptitude requirements.

Second, there are inconsistencies and a lack of clarity in the record regarding the job numbers on which the ALJ relied. VE Howell cited national job numbers for the four identified occupations, which she said came from a specific version of the Job Pro Browser Software. R. 455 (Surveillance System Monitor: 113,020; Call Out Operator: 132,000; Fruit Distributor: 101,000; Bakery Worker: 93,000). In a post-hearing brief, plaintiff submitted an affidavit from a rebutting VE, David Meuse, with significantly lower numbers from the same source upon which VE Howell claimed to have relied. R. 1750 (Surveillance System Monitor: 6,399; Call Out Operator: 6,003; Fruit Distributor: 1,952; Bakery Worker: 47). The ALJ "accept[ed] the job numbers provided by Mr. Meuse and rel[ied] on them in finding that other work existed in the national economy in significant numbers" prior to December 19, 2017. R. 456. However, the exhibits to which Meuse cited as the source of his job numbers do not match the figures in his affidavit or those relied upon by the ALJ. See R. 1752-55. Moreover, on appeal to this court, the parties point out further mistakes: Meuse's exhibits cite to Maine, not Massachusetts, as the relevant region, 20 C.F.R. § 404.1566 ( "work exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions of the country"), and plaintiff identifies a specific mistake in job numbers for Surveillance System Monitor, Docket # 23 at 12. Given the confusing state of the record, the court is simply unable to determine the reliability of the numbers on which the ALJ based his conclusion. Cf. Dorman v. Soc. Sec. Admin., No. 4:12-CV-40023, 2013 WL 4238315, at *9-10 (D. Mass. May 21, 2013) (remanding when record lacked sufficient information supporting reliability of VE's job numbers).

Particularly because the Commission bears the burden at Step 5, the unresolved discrepancies between VE Howell's testimony and the DOT, and the mistakes and lack of clarity in the record regarding job numbers, warrant remand for further proceedings. See Biestek, 139 S. Ct. at 1156-57 (combined shortcomings in VE's testimony may prevent a court from finding that a "reasonable mind" could accept the expert's testimony).

### D.     Reopening of April 17, 2009, Denial

Finally, plaintiff urges this court to direct the reopening of his 2009 SSI and DIB claims. When those claims were denied at the initial level on April 17, 2009, plaintiff did not appeal and, instead, filed new claims in 2012. In the December 28, 2017, decision, the ALJ "did not find any cause for reopening [the 2009 claims]" and thus stated that "the relevant period addressed in [the] decision begins with April 17, 2009, the earliest available date of onset." R. 445.

Under 20 C.F.R. § 404.988(b), a prior claims determination can be reopened "[w]ithin four years of the notice of the initial determination" if there is "good cause." See 20 C.F.R. § 404.989(a)(1). Plaintiff argues that good cause exists because he furnished new and material evidence with his 2012 claims, including "evidence from Dr. Kasparyan and the Disability Evaluation Service." Docket # 17 at 16.

The decision to reopen a prior claim is generally insulated from judicial review absent a colorable constitutional challenge. Califano v. Sanders, 430 U.S. 99, 109 (1977). Here, plaintiff argues that the 2009 file was never made part of the instant

record and that the ALJ's declination to reopen those claims without a basis in the record was therefore a due process violation. Defendant responds that the ALJ merely ignored the "formality of placing the prior file in the record" and that the reopening denial is not reviewable. Docket # 20 at 29.

Because the ALJ's decision merely states, without elaboration or citation, that he did "not find any cause" to reopen, it is unclear whether the omission of the 2009 record was a mistake or whether the ALJ entirely failed to review the 2009 initial determination (and thus had no evidentiary basis for his conclusion that "new and material" evidence was not presented in the subsequent application). R. 445. The latter situation may give rise to a colorable due process claim. Accordingly, on remand, the Commissioner may again decline to reopen the 2009 claims, but the decision must reflect consideration and incorporation into the record of those applications.

## IV. Conclusion

Plaintiff's Motion to Remand the Decision of the Commissioner (Docket # 17) is ALLOWED IN PART, and Defendant's Motion to Affirm the Commissioner's Decision (Docket # 19) is DENIED IN PART. On remand, the Commissioner shall conduct a proper Step 5 analysis as to whether plaintiff was disabled prior to December 19, 2017. The Commissioner shall also consider and officially incorporate into the record the 2009 applications before making a reopening determination.

|  |  |
|---|---|
| 10/17/2019 | /s/ Rya W. Zobel |
| DATE | RYA W. ZOBEL |
|  | SENIOR UNITED STATES DISTRICT JUDGE |